IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| SUSAN FRANK, f/k/a Susan Grayson, | CV 17-16-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Susan Frank brings this action under 42 U.S.C. § 405(g) seeking judicial review of the decision of the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Frank alleges disability since December 10, 2013, due to a back injury, arthritis, diabetes, and depression. (Doc. 6, at 111). Frank's claim was denied initially and on reconsideration, and by an ALJ after an administrative hearing. The Appeals Council denied Frank's request for review, making the ALJ's decision the agency's final decision for purposes of judicial review. Jurisdiction vests with this Court pursuant to 42 U.S.C. § 405(g).

Frank was 53 years old at the time of her alleged onset date and 55 years old at the time of the ALJ's decision in June 2015.

## I.    Standard of Review

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir. 2006).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). This Court must uphold the Commissioner's findings "if supported by inferences reasonably drawn from the record." *Batson v. Commissioner of Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[I]f evidence exists to support more than one rational interpretation," the Court "must defer to the Commissioner's decision." *Batson*, 359 F.3d at 1193 (*citing Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999). This Court "may not substitute its judgment for that of the Commissioner." *Widmark*, 454

F.3d at 1070 (*quoting Edlund*, 253 F.3d at 1156).

## II.    <u>Burden of Proof</u>

To establish disability, a claimant bears "the burden of proving an 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Batson*, 359 F.3d at 1193-94 (*quoting* 42 U.S.C. § 423(d)(1)(A)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520. The claimant bears the burden of establishing disability at steps one through four of this process. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the first step, the ALJ will consider whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(I). If not, the ALJ must determine at step two whether the claimant has any impairments that qualify as "severe" under the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ finds that the claimant does have one or more severe impairments, the ALJ will compare those impairments to the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the ALJ finds at step three that the claimant has an impairment that meets or equals a listed impairment, then the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(iii).

If, however, the claimant's impairments do not meet or equal the severity of any impairment described in the Listing of Impairments, then the ALJ must proceed to step four and consider whether the claimant retains the residual functional capacity (RFC) to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes an inability to engage in past work, the burden shifts to the Commissioner at step five to establish that the claimant can perform other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v).

## III. Discussion

The ALJ found at step one that Frank meets the insured status requirements of the Act through December 31, 2018. The ALJ further found that Frank had not engaged in substantial gainful activity since her December 10, 2013, alleged onset date. At step two, the ALJ found that Frank had the following severe impairments: bilateral osteoarthritis in the hands, ankles, toes, and knees; bilateral total knee arthroplasty surgeries; trochanteric bursitis, degenerative disc disease, obesity, depression, anxiety, and attention deficit disorder. The ALJ concluded at step three that Frank did not have an impairment or combination of impairments that met or medically equaled any impairment described in the Listing of Impairments. The ALJ further found that while Frank's impairments could reasonably be expected to cause her alleged symptoms, her statements regarding the severity of those

symptoms were not entirely credible. The ALJ determined that Frank had the residual functional capacity to perform a reduced range of light work. The ALJ concluded at step four that Frank could perform past relevant work as a hostess and hospital cleaner. Alternatively, the ALJ found that Frank was not disabled at step five because there were other jobs in the national economy that she could perform. (Doc. 6, at 142-54).

Frank argues the ALJ's determination that she has the residual functional capacity to perform a range of light work is not supported by substantial evidence, and raises several issues on appeal. First, Frank maintains the ALJ erred at step two by not including fibromyalgia as a severe impairment. Second, Frank argues the ALJ erred at step three by finding she did not meet or equal the criteria of any listed impairment. Third, the Frank contends the ALJ did not provide specific, clear and convincing reasons for discounting her subjective symptom testimony. Fourth, Frank argues the ALJ did not provide sufficiently specific and legitimate reasons for rejecting the opinions of three treating physicians.

## A.    Severe Impairments

Frank argues the ALJ erred at step two by not including fibromyalgia as one of her severe impairments.

"The step-two inquiry is a de minimis screening device to dispose of

groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At step two, the ALJ must determine whether the claimant has a "severe" impairment. See 20 C.F.R. §§ 404.1520(a) & 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(c). An impairment may be considered non-severe if the evidence establishes only a slight abnormality that has no more than a minimal effect on an individual's ability to work. *See* SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988). The claimant bears the burden of establishing the severity of an alleged impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. § 416.908.

Frank easily cleared the step-two hurdle because the ALJ found that she had several severe impairments. But with respect to her alleged fibromyalgia, the ALJ found there was not enough evidence to establish a medically determinable impairment. In November 1999 – nearly 14 years before the alleged onset date – Frank's primary care physician, Dr. Ronald Logue, noted that she had a history of fibromyalgia in the past and listed his assessment as "fibromyalgia." (Doc. 6-1, at 654). And when Frank spoke with Dr. Logue in April 2014 about back and neck pain she was experiencing as a result of a workers compensation-related injury she suffered in December 2013, Dr. Logue listed fibromyalgia as one of 13 diagnoses.

(Doc. 6, at 789). But it is not clear whether Dr. Logue physically examined Frank. He certainly did not document any clinical findings, and there is no indication that he considered the diagnostic criteria for fibromyalgia.

Frank claims "[t]hese are just representative examples of fibromyalgia in the record" and "there are many more." (Doc. 13, at 17). But Frank does not point to any more examples, and it is not this Court's function to scour the lengthy record this case in search of evidence to support her claims. The Court does note that the word "fibromyalgia" appears several times in the record as part of Frank's medical history and in notes from a handful of her many medical visits over the years, but those records do not contain any clinical findings and do not mention the applicable diagnostic criteria. Because there are no medical records establishing that Frank's alleged symptoms met the diagnostic criteria for fibromyalgia, the ALJ found with record support that fibromyalgia was not a medically determinable impairment.

Even if the ALJ had erred by not identifying fibromyalgia as a severe impairment at step two, any such error would be harmless. Because the ALJ found that Frank had several other severe impairments, he continued with the disability evaluation and considered all of the limitations caused by Frank's impairments, severe or not. The ALJ also considered Frank's allegations of disabling pain when

formulating her residual functional capacity. Thus, any error in not identifying

fibromyalgia as a severe impairment at step two was harmless. See *Baldwin v.*

*Astrue*, 2010 WL 1946902 (C.D. Cal. May 10, 2010) (finding that even if "the ALJ

erred at step two, any error was harmless because the ALJ accounted for the

symptoms and limitations allegedly caused by her fibromyalgia in his residual

functional capacity determination at step four").

## B.    Listed Impairments

Frank also challenges the ALJ's evaluation of the evidence at step three,

which requires the ALJ to consider whether the claimant's impairment, or

combination of impairments, meets or equals an impairment listed in 20 C.F.R. P.

404, Subpt. P, App. 1. "If the claimant meets or equals one of the listed

impairments, a conclusive presumption of disability applies." *Marcia v. Sullivan*,

900 F.2d 172, 174 (9th Cir. 1990). To meet the requirements of a listing, the

claimant "must have a medically determinable impairment(s) that satisfies all of

the criteria in the listing." 20 C.F.R. § 04.1525(d).

To demonstrate medical equivalence, the claimant must have impairments,

considered alone or in combination, that are "at least equal in severity and duration

to the criteria of any listed impairment." 20 C.F.R. § 404. 1526(a). The "ALJ must

evaluate the relevant evidence before concluding that a claimant's impairments do

not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 505, 512 (9th Cir. 2001). Nevertheless, the burden remains with the claimant, who must present medical evidence that his impairments meet or medically equal all of the criteria of a listed impairment. See *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).

Frank argues the ALJ failed to evaluate the impact of her obesity when analyzing the musculoskeletal listings, namely Listings 1.02(A) for major dysfunction of a joint and 1.04A for disorders of the spine. SSR 02-1p recognizes obesity as a medically determinable impairment, and states that an ALJ should consider its effects at all steps of the sequential evaluation process, including step three and when assessing a claimant's residual functional capacity.

Here, the ALJ found that Frank's obesity was a severe impairment at step two, and then expressly evaluated its impact on her ability to function at steps three, four, and five of the sequential evaluation process. (Doc. 6, at 146). At step three, the ALJ considered Frank's obesity in combination with her other impairments in determining whether she met or equaled Listings 1.02(A) and 1.04A. Frank simply argues in general terms that the ALJ did not adequately evaluate her obesity, but does not point to any evidence that her obesity significantly limited her ability to perform work related activities in some way not considered by the ALJ. The record reflects that the ALJ properly evaluated the

9

impact of Frank's obesity as required by SSR 02-1p, and his step three analysis is supported by substantial evidence.

Frank further argues the ALJ erred by failing to consider the impact of her fibromyalgia at step three. As discussed above, however, the ALJ found that Frank's fibromyalgia was not a severe impairment and that finding was supported by substantial evidence. Thus, the ALJ was not required to consider fibromyalgia in any further detail at step three.

Frank also argues the ALJ failed to consider or improperly rejected evidence of her mental impairments, including lay witness statements and medical opinions, showing that she met or equaled the criteria of Listings 12.04 for depressive, bipolar, and related disorders and 12.06 for anxiety and obsessive-compulsive disorders. As discussed below, however, the ALJ properly weighed the medical and other evidence of record, and adequately explained the weight he gave to the various medical and lay witness opinions. Frank's argument that the ALJ erred by finding her mental impairments did not meet or equal Listing 12.04 or 12.06 is cursory at best, and she does not explain how the evidence might show that requirements of either listing are satisfied. See Doc. 13, at 30. To the contrary, review of the ALJ's decision shows he engaged in an adequate step three analysis, and found with record support that Frank's mental impairments were not of listing

level severity.

## C. Medical Opinions

Frank maintains the ALJ improperly weighed the medical evidence, and did not give enough weight to the opinions of three of her treating physicians.

Where there are conflicting medical opinions in the record, "the ALJ is charged with determining credibility and resolving the conflict." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). The weight given a treating or examining physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d)(2). An ALJ may reject the uncontradicted opinion of a treating or examining physician only for clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). To discount the controverted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record." *Lester*, 81 F.3d at 830. The ALJ may accomplish this by setting forth "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

### 1. Dr. Ronald Loge

Dr. Ronald Loge has been Frank's primary care physician since at least

1981. (Doc. 6-1, at 630). During that period, Dr. Loge has treated Frank for a variety of ailments, ranging from respiratory infections to depression and back pain. (See e.g. Doc. 6, at 606-622; Doc. 6-1, at 630-667). Frank claims she has been disabled since December 2013, when she slipped and fell on some ice at work, injuring her lower back and knee. At around the same time, Frank's mother died and she claims that as a result of both her slip-and-fall injury and her mother's death, her depression worsened leaving her unable to work. Dr. Loge continued seeing Frank once every month or two after her alleged onset date. (Doc. 6, at 20-22, 870, 965).

In September 2014 he wrote a letter in support of her disability application. (Doc. 6-1, at 454). Dr. Loge explained that he had reviewed his records "over the last several months" and found her depression was "overwhelming and disabling." He stated that he did not believe Frank could work at that time or "at any time in the near future" and encouraged her to apply for disability based on her chronic depression. (Doc. 6-1, at 454).

The ALJ considered Dr. Loge's letter, but gave it little weight because it was not supported by all of "the rather benign treatment notes in the record." (Doc. 6, at 150). Consistent with the ALJ's reasoning, the medical records reflect that Frank's longstanding depression was for the most part controlled on medication but would

sometimes worsen in reaction to situational stressors, such as the death of her mother and marital difficulties. (See Doc. 6, at 445-586, 637-687; Doc. 6-1, at 341-382). Although Frank's depression worsened after her mother's death in January 2014, it had previously been in remission. (Doc. 6, at 497). And as the ALJ noted, Frank reported at a June 2014 appointment with treating psychologist John Rogers that she was "doing all right" and by the fall of 2014 was doing better. (Doc. 6-1, at 345, 457-470). To be sure, the record also reflects that Frank's depression was sometimes worse during that period, with signs of self-abuse in June 2014 (doc. 6, at 965) and an emergency room visit in July 2014 while experiencing marital discord (doc. 6-1, at 371). While the treatment notes from Dr. Loge and other medical providers thus reflect that Frank's depression fluctuated, the ALJ permissibly found that read in their entirety, those notes did not support Dr. Loge's opinion that Frank would not be able to work due to her depression.

The ALJ also gave Dr. Loge's statement that Frank's depression would preclude her from being "gainfully employed" little weight because the ultimate issue of disability is reserved to the Commissioner. (Doc. 6, at 150). See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1) (determination of disability is reserved to the Commissioner). While the ALJ must consider medical-source opinions about issues reserved to the Commissioner, "treating source opinions on issues that are

reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 9605p, 1996 WL 3744184, *2 (July 2, 1996). Thus, to the extent Dr. Loge simply stated that he believed Frank would not be able to maintain gainful employment because of her depression, the ALJ permissibly gave his opinion little weight because it was not a medical opinion, but rather, a statement on an issue reserved to the Commissioner

Finally, the ALJ gave little weight to Dr. Loge's opinion because he did not provide a "specific function by function rationale for his findings." (Doc. 6, at 150). Although a doctor is not specifically required to provide such a function by function analysis, an ALJ need not accept a medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ allowably discounted Dr. Loge's opinion in part because he did not provide any detail as to the extent of Frank's symptoms or limitations and otherwise failed to explain or support his statement that she would not be able to work due to depression. The Court finds these were sufficiently specific and legitimate reasons for giving Dr. Loge's September 2014 letter opinion little weight.

2.    Dr. Daniel Downey

Frank contends the ALJ should have given more weight to a

recommendation by treating orthopedist Dr. Daniel Downey in March 2015 that "she use a cane in her right hand if she is feeling unsteady as she has taken about 3 falls in the last year." (Doc. 6-1, at 474). The ALJ did not give any particular weight to Dr. Downey's recommendation because there was no evidence in the record establishing that a cane was medically necessary. The ALJ found that Dr. Downey's statement was merely a suggestion, and was not based on any medical need but on Frank's "subjective and unsubstantiated reports of falls." (Doc. 6, at 150).

Frank argues her history of falls is documented in the record. She points to evidence documenting her slip-and-fall on the ice in December 2013, and a note from a physical therapy visit in January 2015 referring to the fact that Frank's heel slipped while she walking down some stairs backwards. (Doc. 6-1, at 510). The fall in December 2013 was not within the one year period Dr. Downey was referring to. Even assuming the fact that Frank's heel slipped while she walking backwards down the stairs can be construed as a "fall" – that single event does not substantiate her subjective reports to Dr. Downey. Frank also argues her husband's lay witness statement corroborates her alleged history of falls. As discussed below, however, the ALJ provided germane reasons for discounting his statement as well as Frank's subjective testimony. It is thus fair to say that Dr. Downey's statement regarding

the use of a cane was based on subjective and unsubstantiated reports of falls, and the ALJ permissibly discounted it on that basis.

   3.   Dr. Timothy Visscher

Frank established care with her treating psychiatrist, Dr. Timothy Visscher, in March 2010. Frank maintains the ALJ erred by not giving more weight "to all the opinions of [her] treating psychiatrist Timothy Visscher." (Doc. 13, at 25). She argues the ALJ erred by not addressing the Global Assessment of Functioning (GAF) ratings that Dr. Visscher assigned after each of their visits. The ALJ did address those ratings, however, but gave them little weight because they were merely "snaphsots" in time and were not an indication of Frank's overall functioning. (Doc. 6, at 152). See *Holt v. Colvin*, 2015 WL 1275907, *15 (E.D. Cal. March 19, 2015) (finding ALJ permissibly gave GAF scores little weight because they were "snapshots in time" and citing several similar cases).

The rest of Frank's argument regarding Dr. Visscher is simply a summary of his medical records. She points to various statements and observations in his treatment notes, but does not identify specific medical opinions regarding the nature and severity of her impairments and limitations. (Doc. 13, at 25-26). The ALJ considered Dr. Visscher's records, and found that overall they reflected "that her medications were causing a fairly good response for depression, except for

situational life stressors or interpersonal conflicts." (Doc. 6, at 149). The ALJ is responsible for weighing the medical evidence, and it is not this Court's function to re-weigh that evidence on appeal. Frank has not shown that the ALJ erred in weighing Dr. Vissher's treatment records along with the rest of the medical evidence and ultimately finding that Frank was not disabled.

### D     Subjective Symptom Testimony

Frank argues the ALJ did not provide sufficiently clear and convincing reasons for discounting her subjective symptom testimony.

The ALJ must follow a two-step process when evaluating a claimant's subjective symptom testimony. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. If the claimant meets this initial burden, at step two the ALJ may discredit the claimant's subjective symptom testimony about the severity of his or her symptoms "only by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036.

Here, the ALJ found that Frank met her initial burden because she produced evidence that she has medically determinable impairments which could reasonably

be expected to cause her alleged symptoms. (Doc. 6, at 148). The ALJ then found that Frank's subjective allegations were not entirely credible for three reasons.

First, the ALJ found that Frank's complaints of debilitating physical and mental symptoms were not consistent with evidence showing that her impairments improved with treatment. For example, the ALJ noted that while Frank described having severe orthopedic joint pain that prevented her from sitting, standing, or walking for extended periods, she benefitted from physical therapy and by March 2014 the pain in her neck, lower, back, hips and shoulder had improved and she was making good progress. (Doc. 6, at 148, 622). With respect to Frank's mental impairments, the ALJ noted that while Frank claimed her panic attacks and depression were so severe that she could not focus or work with others, medical records showed that her mental health "medications were causing a fairly good response for depression, except for situational life stressors and interpersonal conflicts." (Doc. 6, at 148, 496). The ALJ reasonably found that Frank's allegations as to the severity of the symptoms associated with her physical and mental impairments were not consistent with evidence showing that those symptoms improved with physical therapy, medication, and other treatment.

Second, the ALJ found that Franks' testimony was not entirely consistent with the objective medical evidence. The ALJ discussed the fact that once Frank

recovered from her fall on the ice in December 2013, her medical records consistently showed only mild to moderate objective abnormalities on physical examination. (Doc. 6, at 148, 622, 773, 888; Doc. 6-1, at 450, 474, 790). For example, the ALJ noted that by May 2014, Dr. Loge found marked improvement in Frank's neck range of motion, no gluteal tenderness, no spinal tenderness, and only slight tenderness in Frank's lumbar muscles. (Doc. 6, at 148, 888-89). And in June 2014, Dr. Loge observed that Frank's back was "pretty much pain free." (Doc. 6, at 990). With respect to Frank's mental impairments, the ALJ again recognized that Frank's symptoms sometimes increased in the face of situational stressors, but discussed records showing that for the most part her mental status examinations were unremarkable. (Doc. 6, at 150, 496; Doc. 6-1, at 515, 800).

Third, the ALJ found that Frank's testimony was inconsistent with evidence of her activities, namely, the fact that she regularly volunteered at an animal shelter after her alleged onset date and in February 2015, reported frequently lifting 25 to 30 pounds throughout the day. (Doc. 6, at 150, 6-1, at 520). These were sufficiently clear and convincing reasons for discounting Frank's subjective symptom testimony.

Although Frank argues the ALJ erred by failing to specifically discuss the side effects of her medications when evaluating her subjective allegations, she does

not point to any specific medical records that she believes the ALJ overlooked. The ALJ thoroughly discussed the medical records and considered Frank's allegations of disabling mental functioning but found for the clear and convincing reasons set forth above that those allegations were not entirely credible.

### E. Vocational Expert

Frank argues the ALJ did not adequately account for all of her limitations in the residual functional capacity assessment, and erred by finding her not disabled at steps four and five of the sequential evaluation process. As discussed above, however, the ALJ properly evaluated Frank's subjective testimony and the medical evidence. Having done so, the ALJ was not required to include any additional imitations in the residual functional capacity assessment, which was supported by substantial evidence. See *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989) (the ALJ need not include limitations not supported by substantial evidence). The ALJ permissibly found after comparing Frank's residual functional capacity with the physical and mental demands of her past work that she was not disabled at step four. Alternatively, the ALJ allowably found based on the vocational expert's testimony that Frank was not disabled at step five.

## IV. Conclusion

For all of the above reasons, the Court concludes that the ALJ's decision is based on substantial evidence and free of prejudicial legal error. Accordingly,

IT IS ORDERED that the Commissioner's decision is affirmed.

DATED this 29th day of March, 2018.

_____
Jeremiah C. Lynch
United States Magistrate Judge